UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 10-CV-3311 (JFB) (ARL)
_____

MARY LITCHHULT,

Plaintiff,

VERSUS

USTRIVE2, INC.,

Defendant.

_____

**MEMORANDUM AND ORDER**
September 1, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Mary Litchhult ("Litchhult" or "plaintiff") brings this action against USTRIVE2, Inc. ("defendant" or "USTRIVE2") alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 296 et seq. ("NYHRL"), as well as claims for breach of contract, fraudulent inducement and misrepresentation, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.

Defendant moves to dismiss some of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure—namely, the hostile work environment claims, the fraudulent inducement/misrepresentation claims, the claim for breach of the covenant of good faith and fair dealing, and the intentional infliction of emotional distress claim.[1]

For the reasons set forth herein, defendant's motion is granted in its entirety, but with leave to re-plead the fraudulent inducement/misrepresentation claim. Specifically, plaintiff's hostile work environment claim under Title VII and the NYHRL must fail because it is based upon one incident that, as a matter of law, cannot (as alleged) state a plausible hostile work environment claim. Plaintiff's claim for fraudulent inducement based on the stock

---

[1] The claims for retaliation and breach of contract are not the subject of the motion to dismiss and will proceed.

option plan and her claim for breach of the covenant of good faith and fair dealing are dismissed as duplicative of her breach of contract claim. Plaintiff's fraudulent inducement/misrepresentation claim based on statements regarding defendant's financial well-being was not pled with the requisite specificity because it did not state why she believed the statements to be false, but the Court grants plaintiff leave to amend this claim. Finally, plaintiff's claim for intentional infliction of emotional distress is dismissed as time-barred.

I. BACKGROUND

A. Facts

The following facts are taken from the Complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

On September 15, 2008, defendant made an offer of employment to plaintiff to work as the Vice President of Multimedia Distribution in New York. (Compl. ¶ 13.) Plaintiff commenced her employment the same day, and signed an employment agreement (the "Agreement") on September 30, 2008. (*Id*. ¶ 19.)

Prior to the offer and acceptance of employment, defendant "advised plaintiff that it had secured 54% of the $5,000,000.00 in funding, with the balance to be obtained by the end of September 2008." (*Id*. ¶ 12.) Plaintiff was aware prior to accepting and signing her employment agreement that obtaining license agreements and establishing relationships with movie studios "would be a lengthy process as would signing up retailers" for defendant's service. (*Id*. ¶ 9.)

On or about April 8, 2009, plaintiff participated in a meeting with defendant's technical team. (*Id*. ¶ 34.) A member of that team presented a slide defining the term "Sprint" as "Engineer's Menstrual Cycle." (*Id*. ¶¶ 35-36.) The same presenter described an "engineer during a 'sprint' cycle to be analogous to a woman during her menstrual cycle in that they have three weeks in the month when they are cranky and have only five productive days a month." (*Id*. ¶ 37.) Plaintiff expressed her disapproval with the slide at the meeting and also emailed defendant's HR contact about the offensive slide. (*Id*. ¶¶ 38-39.) Plaintiff and another female attendee of the meeting complained on both April 8 and April 9, 2009. (*Id*. ¶ 41.) Not all females attending the meeting complained, however. (*Id*. ¶ 42.) Plaintiff was terminated on April 24, 2009, approximately two weeks after filing her complaint with HR. (*Id*. ¶ 45.) The other female co-worker who lodged a complaint was also fired, while the female who attended the meeting but did not file a complaint was not let go. (*Id*. ¶¶ 47-48.)

B. Procedural History

Plaintiff filed the complaint on July 20, 2010. Defendant requested leave to file a motion to dismiss on September 17, 2010. In an Order dated September 20, 2010, this Court waived the pre-motion conference requirement and set a briefing schedule for defendant's motion. Defendant filed its motion to dismiss on October 18, 2010. Plaintiff filed her opposition on November 17, 2010. Defendant filed its reply on November

29, 2010. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

When the Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 129 S.Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Although "legal conclusions can provide the framework of a complaint, they must besupported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556–57).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obliged to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. N.Y. State Unified Court Sys.*, No. 10–CV–2144 (JFB)(ETB), 2010 U.S. Dist. LEXIS 69835, at *8 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) and *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, even though the Court construes a pro se complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to pro se complaint).

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5)

facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859(JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

III. Discussion

A. The Hostile Work Environment Claim

Defendants argue that the complaint fails to state a plausible hostile work environment claim under Title VII and the NYHRL because the allegedly hostile conduct, even if true, cannot support a hostile work environment claim as a matter of law because it was not sufficiently severe or pervasive. (Def.'s Mot. at 6-9.) As set forth below, the Court agrees. Although plaintiff correctly notes that a single act can be severe enough under some circumstances to create a hostile work environment (Pl.'s Opp. at 8-9), that is not the case here.

Under Title VII, a hostile work environment is established by a plaintiff showing that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *Petrisch v. JP Morgan Chase*, --- F. Supp. 2d ----, 2011 WL 167629, at *11 (S.D.N.Y. Jan. 11, 2011) (same).

The conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quotation marks omitted). In addition, a plaintiff seeking to establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quotation marks omitted). Other factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148. The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover,

4

although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotations marks omitted).

The standard under Title VII is applicable to hostile work environment claims under the NYHRL. *See, e.g., Cruz*, 202 F.3d at 565 n. 1; *Collier v. Boymelgreen Developers*, No. 06-CV-5425 (SJ), 2007 WL 1452915, at *4 (E.D.N.Y. May 17, 2007) ("The Court's consideration of claims brought under [NYHRL] [] parallels the analysis used for Title VII claims.").

Plaintiff solely alleges a single act, which cannot be deemed to "transform" her workplace environment. Plaintiff's hostile work environment claim is based entirely on a slide and comment made at one meeting. (*See* Pl.'s Opp. at 8-9.) During that meeting, a member of defendant's technical team allegedly compared the term "sprint" to a menstrual cycle. The team member allegedly analogized that an engineer during a "sprint" cycle is similar to a menstruating female in that the engineer only has five productive days out of the month and is cranky for three out of four weeks. Although the slide and statement by the team member are offensive, they do not rise to the level of severity required under Title VII and the NYHRL, as a matter of law. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (distinguishing physically threatening or humiliating conduct from that which is simply an offensive utterance); *Hemans v. Long Island Jewish Med. Center*, No. 10-CV-1158 (JFB), 2010 WL 4386692, at * 11 (E.D.N.Y. Oct. 28, 2010) (concluding that comments on one occasion that plaintiff should retire because it is time for him to go because of his age "by themselves cannot as a matter of law constitute a hostile work environment claim because they cannot plausibly meet the requisite threshold of severity or pervasiveness. Nevertheless, in another portion of his opposition brief, plaintiff's counsel also points, in the alternative, to other alleged incidents . . . ."). As a result, the Court dismisses plaintiff's claims based on hostile work environment pursuant to Title VII and the NYHRL.[2]

B. Fraud

Defendant asserts that plaintiff's fraud claims are insufficiently pled. In the alternative, defendant argues that plaintiff cannot properly rely on future events that may or may not occur to plead fraud and that the fraud claim is duplicative of plaintiff's breach of contract claim. In her complaint, plaintiff alleges that defendant fraudulently induced her into entering the Agreement by: (1) causing her to sign the Agreement by promising her stock options knowing that the promise was false (Compl. ¶ 75; *see also* Pl.'s Opp. at 12); and (2) by making allegedly false misrepresentations about its "financial well-being" that also induced plaintiff into signing the Agreement (Compl. ¶ 78; *see also* Pl.'s Opp. at 12).[3]

---

[2] There is no indication in plaintiff's opposition papers that there are any other alleged incidents to support a hostile work environment claim, other than the one referenced in the complaint. However, if plaintiff wishes to allege additional conduct, plaintiff can request leave to re-plead this claim.

[3] In her complaint, plaintiff separates these claims into one for fraudulent misrepresentation, based

5

As set forth below, the Court rejects defendant's argument that plaintiff has failed to allege (1) which statements were fraudulent; (2) the identity of the speaker; and (3) where and when the statements were made. Plaintiff has adequately pled those facts. Similarly, the Court is not persuaded by defendant's arguments that all of the alleged misrepresentations relate to future events, and that all of the fraud claims are duplicative of the breach of contract claim. In particular, one of the alleged misrepresentations relates to *present* facts regarding the financial strength of USTRIVE2 and, as the basis for a fraudulent inducement claim, would not be duplicative of the breach of contract claim. However, the Court does agree with defendant that the pleading is defective because it does not allege why these alleged statements were fraudulent. Thus, the motion to dismiss the fraud claims is granted, but with leave to re-plead the fraudulent inducement claim to correct this defect.

1. Legal Standard

"Under New York law, 'to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (N.Y. App. Div. 2003)). The Second Circuit has also articulated a "slightly different formulation" of the elements of a fraud claim under New York law which includes a showing of an intent to defraud. *See Lerner*, 459 F.3d at 291 n. 8. Those elements are: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damages to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Fed. R. Civ. P. 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner*, 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). In addition, "[a]lthough Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent.'" *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, No. 99-CV-3227 (JGK), 2000 U.S. Dist. LEXIS 14043, at *23 (S.D.N.Y. Sept. 22, 2000) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "These requirements ensure that 'a complaint alleging fraud' is filed 'only after a wrong is reasonably believed to have occurred,' and 'not to find one.'" *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006) (quoting *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972)). "Where multiple

---

on defendant's financial well-being, and one for fraudulent inducement, based on the stock option plan offered to plaintiff. However, the Court will consider both of these claims as different theories for a fraudulent inducement claim because plaintiff is arguing that the false misrepresentations made by defendant about the stock option plan and defendant's finances induced her into signing the Agreement.

defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

2. Application

As a threshold matter, defendant argues that plaintiff fails to adequately allege under Rule 9(b) what statements were fraudulent, the identity of the speaker, and where and when the statements were made. The Court disagrees. Plaintiff alleges, among other things, that defendant's president, Harlan Lyons ("Lyons"), advised her that defendant had obtained 54% of the $5,000,000 in financing it was seeking. (Compl. ¶¶ 12, 19, Ex. B (email from Harlan Lyons to Aaron Knoll stating that the defendant was 54% financed).)[4] The statement was made "in or around August and September 2008" when plaintiff was participating in meetings with defendant. (*Id.* ¶¶ 6-12; *see also* Pl.'s Opp. at 10.) Thus, the allegations in the complaint, with the documents attached to the complaint, are clearly sufficient to satisfy these requirements of Rule 9(b).

Similarly, the Court concludes that this statement was not a representation of a future event as defendant argues. (Def.'s Mot. at 10-11.) In other words, an allegedly false statement by the defendant that it obtained 54% of its financing at the time the statement was made is a statement of present fact that can be the basis of a fraudulent inducement claim. *See, e.g., Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (defendant's statements "that it had recently secured a large environmental law client and was in the process of establishing an environmental law department were not future promises but representations of present fact." (quotation marks omitted)). Thus, dismissal on this grounds is warranted.

In addition, contrary to defendant's contention, the Court concludes that this type of fraudulent inducement claim is not duplicative of the breach of contract claim because this alleged fact regarding the financial condition of defendant was collateral to the contract and, therefore, involved an alleged separate breach of duty from the contract. *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) ("'[A] misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty.'" (quoting *First Bank of Americas v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (N.Y. App. Div. 1999)); *accord Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Thus, the fraudulent inducement claim based upon collateral, present facts at the time of the signing of the contract regarding the financial strength of the defendant is not duplicative of the breach of contract claim.[5]

---

[4] Defendant argues that plaintiff inappropriately relies on this statement, which was made to Aaron Knoll. (Def.'s Mot. at 10.) However, it is apparent that in fact plaintiff alleges that she was told the same thing about defendant being 54% financed. (Compl. ¶ 12.)

[5] However, the Court concludes that plaintiff cannot maintain a fraudulent inducement claim against defendant based on allegedly false representations about the stock option plan offered in the Agreement because those are

7

With respect to defendant's remaining argument under Rule 9(b), the Court agrees that plaintiff has failed to properly allege why she believed the alleged misrepresentation of defendant's finances was fraudulent at the time of the signing of the contract. As noted above, plaintiff alleges that defendant's president advised her that defendant had obtained 54% of the $5,000,000 in financing it was seeking. (Compl. ¶¶ 12, 19, Ex. B.) However, nowhere in the complaint does plaintiff explain why she believed that defendant's statement was fraudulent. As a result, plaintiff has failed to plead fraudulent inducement on this ground with sufficient particularity. *See, e.g., Rombach v. Chang*, 355 F.3d 164, 172-75 (2d Cir. 2004) ("We agree with the district court that the complaint does not 'state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made,' and therefore fails the tests of Rule 9(b)," further noting that "nothing in the complaint explains with adequate specificity how those statements were actually false or misleading."); *Carvel v. Ross*, No. 09 Civ. 0722 (LAK)(JCF), 2011 WL 856283, at *22 (S.D.N.Y. Feb. 16, 2011) (explaining that plaintiff failed to plead fraud with sufficient particularity because, among other reasons, plaintiff "also has not explained why [the] statement [at issue] was fraudulent"); *City of Omaha v. CBS Corp.*, No. 08 Civ. 10816 (PKC), 2010 WL 1029290, at *10 (S.D.N.Y. Mar. 16, 2010) ("[P]laintiffs cannot rest on their say-so in asserting that statements are fraudulent; they must explain why." (quotation marks omitted) (collecting cases)); *Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 503-04, 508 (S.D.N.Y. 1989) ("Plaintiffs' allegations of fraudulent statements and omissions do not satisfy the requirements of Rule 9(b) without a recitation of the particular statements made, the reasons why those statements were fraudulent and the basis for this belief.")

However, the Court will grant plaintiff leave to replead her fraudulent inducement claim based on defendant's statement regarding its financial well-being. The Court is mindful of plaintiff's *pro se* status; the Second Circuit has emphasized that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give [leave to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Court concludes that leave to replead is appropriate in this case because

---

written into the agreement and, therefore, not collateral to the agreement. Therefore, such a fraud claim regarding the stock option plan is duplicative of plaintiff's breach of contract claim. *See, e.g., Powe v. Cambium Learning Co.*, No. 08 Civ. 1963 (JGK), 2009 WL 2001440, at *7 (S.D.N.Y. July 9, 2009) ("The gist of the plaintiffs' fraud claims is that the defendant never intended to permit the exercise of the stock options that it granted in the Employment Agreements, which explicitly contemplated the exercise of such options by providing for an exercise price. . . . That is effectively the same as the gist of the plaintiffs' breach of contract claims." (citations omitted)); *Dealtime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 759-60 (S.D.N.Y. 2000) ("Neither the seven-year option period nor the lack of any vesting requirement for the stock options was collateral to the contract. In fact, both went to the root of the agreement as reflected in the letter agreement . . . which (a) sets forth the seven-year stock option exercise period, and (b) makes no mention of any vesting period.").

8

this is the type of pleading defect which plaintiff may be able to correct. *See, e.g., Wolf*, 715 F. Supp. at 508 (dismissing claim based on fraudulent misrepresentations with leave to replead).

## C. Breach of Covenant of Good Faith & Fair Dealing

Plaintiff also alleges that defendant breached the covenant of good faith and fair dealing implied in every contract, including the instant agreement. The claim rests entirely on the alleged breaches of the contract at issue in the breach of contract claim. Thus, the claim for a breach of the covenant of good faith and fair dealing is dismissed as duplicative of plaintiff's cause of action for a breach of contract. *See, e.g., Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *TVT Records v. Island Def Jam Music Grp.*, 244 F. Supp. 2d 263, 277 (S.D.N.Y. Feb 13, 2003) ("[A] claim for breach of the covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract."); *see also Alter v. Bogoricin*, No. 97 CV 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 06, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative."); *Apfel v. Prudential-Bache Sec., Inc.*, 583 N.Y.S.2d 386, 387 (N.Y. App. Div. 1992) ("The cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing.").

## D. Intentional Infliction of Emotional Distress

Lastly, plaintiff's claim for intentional infliction of emotional distress is time-barred. A one-year statute of limitations applies to claims of intentional infliction of emotional distress brought under New York law. *See* N.Y. C.P.L.R. § 215(3); *Balkanli v. City of N.Y.*, No. 07-CV-2204 (NG), 2009 WL 1346736, at *2 (E.D.N.Y. May 14, 2009) ("Claims of intentional infliction of emotional distress, libel, and slander are subject to a one-year statute of limitations under New York law."); *Rock v. Mustich*, No. 08-CV-4976 (CS)(PED), 2009 WL 2391776, at *5 (S.D.N.Y. Aug. 3, 2009) (applying one-year statute of limitations for intentional infliction of emotional distress (citing *Gallagher v. Directors Guild of Am., Inc.*, 533 N.Y.S.2d 863 (1988)). The conduct alleged in the complaint, and upon which this claim is based, took place between August of 2008 and April 24, 2009, when plaintiff was terminated. (Compl. ¶¶ 6-45.) The complaint was filed on July 20, 2010, clearly more than a year later. Plaintiff's claim for intentional infliction of emotional distress is, therefore, dismissed as untimely.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is granted in its entirety. Plaintiff may file an Amended Complaint within thirty days of receipt of this Memorandum and Order which, in addition to repeating her pending claims for retaliation and breach of contract, re-alleges her fraudulent inducement claim to specify why she believes the alleged statement was fraudulent.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 1, 2011
Central Islip, New York

\* \* \*

Plaintiff Mary Litchhult is proceeding *pro se*. The attorneys for the defendant are Robert J. Anderson and James M. Woolsey, III, 120 Broadway, 27th Floor, New York, NY 10271.